UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA LAHAIE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 14-1108 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　Plaintiff Sandra Lahaie filed this action on February 20, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 7, 17.) On October 29, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

　　Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.
## PROCEDURAL BACKGROUND

On April 11, 2011, Lahaie filed applications for disability insurance benefits and supplemental security income, alleging an onset date of February 18, 2010. Administrative Record ("AR") 22, 101, 108.  The applications were denied.  AR 22, 64-65.  Lahaie requested a hearing before an Administrative Law Judge ("ALJ").  AR 74-75.  On September 5, 2012, the ALJ conducted a hearing at which Lahaie and a vocational expert testified.  AR 47-62.  On October 17, 2012, the ALJ issued a decision denying benefits.  AR 19-29.  On December 19, 2013, the Appeals Council denied the request for review.  AR 1-5.  This action followed.

# II.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada,* 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Lahaie meets the insured status requirements through June 30, 2015. AR 24.

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Lahaie had the severe impairment of epilepsy. AR 24. She had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but she would need to avoid hazardous machinery and unprotected heights, and she could not climb ladders, ropes or scaffolds. AR 25. She was capable of performing past relevant work as retail cashier, phone appointment clerk and customer service representative. AR 28.

### C. Credibility

Lahaie contends the ALJ's credibility finding was not supported by substantial evidence.

"To determine whether a claimant's testimony regarding subjective pain or

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13) (quotation marks omitted).[2] The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59

---

[2] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

4

(9th Cir. 2002).

Lahaie testified that her seizures prevent her from working. AR 25, 53. She has one to three seizures per week. AR 25, 55. Her seizures last anywhere from two minutes to eight hours. AR 55-56. After a seizure, she is tired, drowsy, and has bad headaches. AR 25, 55. She stopped working because she had a seizure at work. AR 25, 51. She has experienced seizures since she was a child. AR 53.

The ALJ found that Lahaie's medically determinable impairment could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC. AR 26. The ALJ relied on four reasons: (1) Lahaie's activities of daily living were not consistent with the alleged degree of impairment; (2) Lahaie had a poor work history; (3) the objective evidence did not support the degree of Lahaie's subjective complaints; and (4) Lahaie did not receive consistent or recent treatment for her seizures. AR 26-27. The ALJ's reasons were legally sufficient and supported by substantial evidence in the record.

1. Activities of Daily Living

An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346. The ALJ noted that Lahaie could prepare her own meals, complete some household chores, use public transportation, ride in a car, shop in stores, handle her finances, watch television, go to church and coffee shops, and go on walks. AR 26, 187-89. Unless she was experiencing a seizure, she could handle personal care and follow instructions. AR 186, 190. The ALJ concluded that Lahaie's daily activities supported the RFC, which excluded working around hazardous machinery and unprotected heights, and climbing ladders, ropes or scaffolds.

Lahaie argues that her daily activities do not appear inconsistent with her

5

allegations of disability. When evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523. However, even assuming the ALJ erred in discounting Lahaie's credibility based on her activities of daily living, remand is not necessarily warranted. In *Carmickle v. Comm'r*, 533 F.3d 1155 (9th Cir. 2008), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. However, when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning and ultimate credibility determination." *Id*. at 1162 (italics in original). Therefore, when, as here, an ALJ articulates specific reasons for discounting a claimant's credibility, reliance on an illegitimate reason(s) among others does not automatically result in a remand. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

### 2. Poor Work History

An ALJ may rely on poor work history to discount a claimant's credibility. *Thomas*, 278 F.3d at 959. The ALJ noted that Lahaie appeared to have no substantial gainful activity since 2006, which was four years prior to the alleged onset date. AR 26, 152-53. Lahaie's absence from the workplace prior to February 18, 2010 "raises a question as to whether [her] continuing unemployment is actually due to medical impairments and diminishes [her] credibility." AR 26. Lahaie's earnings in 2007-2010 were below the substantial gainful activity threshold for those years. AR 152. Lahaie's poor work history prior to the alleged onset date is supported by substantial evidence.

### 3. Objective Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d

676, 681 (9th Cir. 2005). The ALJ found that the objective evidence did not support the alleged frequency, length, or severity of Lahaie's seizures and alleged exertional limitations. AR 26. The ALJ provided a thorough review of the medical evidence relating to the history of Lahaie's seizures. AR 26-27, 227-40, 250-59, 260-319. MRIs of the brain in 2009 revealed asymmetric abnormal FLAIR hyperintensity of the left anterior temporal pole with predilection for the medial portion involving the uncus and amygdala. AR 26, 257-59. Treatment notes did not document seizures as frequently as alleged. AR 27. On March 3, 2010, Lahaie stated her last seizure was one month ago.[3] AR 27, 320. On August 17, 2010, Lahaie reported that her last seizure was in July 2010. AR 326. On September 21, 2010, Lahaie indicated that her last seizure was four weeks ago. AR 27, 248-49. She reported that the seizure lasted three minutes and she was confused for three days thereafter. AR 248. She reported that her seizures occur every three to four weeks, usually in connection with her menstrual cycle. *Id.* On February 22, 2011, Lahaie reported seizures during her sleep since Saturday night. Her boyfriend noticed "little shakes" through the night. Lahaie had nausea, night sweats and headache. She felt better after taking Advil and did not have more seizures. AR 247. On April 5, 2011, Lahaie reported that she had two visits to the emergency room for seizures in the last two months. AR 27, 241. Lahaie started Keppra for her uncontrolled seizures. AR 241-42, 260. The ALJ's finding is supported by substantial evidence.[4]

### 4. Lack of Consistent or Recent Treatment

The ALJ noted the absence of consistent or recent treatment for Lahaie's seizures. AR 27. The record does not contain medical records regarding

---

[3] The record contains evidence of seizures prior to the onset date. On December 30, 2008, Lahaie had a 45-second seizure at work. AR 227-34. On November 8, 2009, Lahaie had a one-minute seizure at work. AR 235-40.

[4] Lahaie acknowledges that "the frequency of her seizures may not be documented." JS 14.

7

seizures for the period after April 2011 except for a consultation request to the Epilepsy Surgery Clinic on August 14, 2012. AR 27, 213. Failure to seek treatment may be considered in assessing credibility. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (claimant's statements may be less credible if level or frequency of treatment is inconsistent with degree of complaints); *see also Burch*, 400 F.3d at 681 (lack of consistent treatment may be considered).

The ALJ's credibility finding is supported by substantial evidence. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing."[5] *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

### D. Treating Physician

Lahaie contends the ALJ erred in evaluating the opinion of Dr. Soll, her treating physician.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not

---

[5] To the extent Lahaie argues the ALJ failed to develop the record, her argument is rejected. The ALJ did not find that the record was ambiguous or inadequate. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

To the extent Lahaie argues the ALJ failed to discuss the fatigue she suffered from her medications, her argument is rejected. At the hearing, Lahaie testified that she got tired and drowsy after having a seizure, but she did not identify fatigue and drowsiness as a reason she could not work. AR 53, 55. Dr. Soll mentioned "drowsiness, fatigue" as side effects from medication, but he did not indicate that side effects interfered with Lahaie's ability to work. AR 348; *see Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) ("There were passing mentions of the side effects of [plaintiff's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [her] ability to work.").

8

reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas*, 278 F.3d at 956-57.

Dr. Soll completed a five-question, check-the-line form regarding seizures on August 14, 2012. AR 347-48. Dr. Soll indicated that Lahaie had convulsive seizures more than once a week and had non-convulsive seizures several times a week. AR 27, 347. He listed drowsiness and fatigue as significant side effects from medication. AR 27, 348.

The ALJ gave Dr. Soll's opinion "little weight" on the ground that Dr. Soll's medical records did not support his statement as to the frequency of seizures. AR 27. The ALJ noted that the form appeared to be based on Lahaie's subjective complaints (which the ALJ discounted), particularly in light of the referral for evaluation on the same date.[6] *Id.*

Lahaie argues that the ALJ should have sought clarification from Dr. Soll if she found his opinions ambiguous or inconsistent with the evidence. Rejection of a treating physician's opinion does not by itself trigger a duty to contact the physician for further explanation. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). The ALJ made no finding that the evidence was ambiguous or that the record was inadequate to allow for proper evaluation. *See Mayes*, 276 F.3d at 459-60. Therefore, the ALJ did not have a duty to recontact Dr. Soll.

As discussed above, the ALJ did not err in not addressing Dr. Soll's

---

[6] Although Lahaie argues there is no indication that Dr. Soll's opinions were based on subjective complaints, the ALJ could reasonably infer that the source was Lahaie from the fact that Dr. Soll's medical records did not document the frequency of seizures that he opined in August 2012.

9

statement about fatigue and drowsiness from medications.  Dr. Soll did not indicate that fatigue and drowsiness affected Lahaie's ability to work.  The ALJ is not required to discuss every piece of evidence on record, as long as the decision is supported by substantial evidence.  *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  Rather, the ALJ need only explain why "significant probative evidence has been rejected."  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation and quotation marks omitted).

The ALJ articulated specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Soll's opinion.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: December 30, 2014

*Alicia G. Rosenberg*

ALICIA G. ROSENBERG
United States Magistrate Judge